Bryan N. DeMatteo (BD 3557)
bryan@demfirm.com
DeMatteo Law, PLLC
830 Third Avenue, 5th Floor
New York, NY 10022
Tel.: (866) 645-4169
Fax: (732) 301-9202
*Attorneys for Plaintiff*
*Badhouse Studios, LLC*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BADHOUSE STUDIOS, LLC | Civil Action No. 1:17-cv-07071 |
| *Plaintiff,* | |
| v. | |
| DOE—74.65.247.93, DOE—74.71.52.96, DOE—24.103.44.72, DOE—98.15.168.97, DOE—72.80.105.235, DOE—96.246.185.196, DOE—71.183.40.114, DOE—72.69.207.189, DOE—108.6.15.135, DOE—67.245.175.11, DOE—74.66.241.162, DOE—158.222.147.146, and DOE—69.121.181.58, | **COMPLAINT** **JURY TRIAL DEMANDED** |
| *Defendants.* | |

Badhouse Studios, LLC ("BADHOUSE"), by and through its undersigned attorneys,

alleges as follows:

## NATURE OF THE ACTION

1.       This is a civil action for copyright infringement of a federally registered copyright

in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act"),

individually and collectively by Doe—74.65.247.93, Doe—74.71.52.96, Doe—24.103.44.72,

Doe—98.15.168.97, Doe—72.80.105.235, Doe—96.246.185.196, Doe—71.183.40.114, Doe—

72.69.207.189, Doe—108.6.15.135, Doe—67.245.175.11, Doe—74.66.241.162, Doe—158.222.147.146, and Doe—69.121.181.58 (collectively, "Defendants" or "Doe Defendants"). Plaintiff seeks injunctive relief, statutory damages, attorney fees and costs, and such other relief as the Court deems proper.

## JURISDICTION AND VENUE

2.      This Court has Federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) as an action arising out of violations of the Copyright Act.

3.      Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) because, on information and belief, Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this judicial district, causing damage to Plaintiff in this district.

4.      Geolocation data obtained by Plaintiff's investigator, MaverickEye UG ("MaverickEye"/ www.maverickeye.de), identifies the Internet Protocol ("IP") address associated with each Doe Defendant as geographically located within this district and, in conjunction with the observed infringing behavior, also shows that each Doe Defendant reproduced and distributed BADHOUSE's work in this judicial district, and thus purposefully availed himself or herself of the privilege of conducting activities in this district.  Plaintiff's counsel also searched for the IP addresses on various web search tools, such as Google, and attempted to trace the location of D IP addresses via the following websites: www.iplocation.net, www.ipfingerprints.com, and www.ip-address.org ("IP Address Locators").  The IP Address Locators confirmed the geolocation data obtained by MaverickEye and establishes, to a reasonable degree of certainty, that the IP addresses used by Defendants were assigned to individuals located within this judicial district.  Accordingly, personal jurisdiction exists over Defendants because, upon information and belief, Defendants have committed the tortious conduct alleged herein in

New York and in this judicial district, Defendants reside in New York, and/or otherwise purposefully avail themselves of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

## THE PARTIES

5.     Plaintiff BADHOUSE is a corporation organized and existing under the laws of the State of California, with principal offices located in Chula Vista, California.

6.     The true identifies of Defendants are currently unknown.  However, Plaintiff's investigator, MaverickEye, has been able to ascertain specific facts related to Defendants, including IP addresses used by Defendants to download and distribute unauthorized copies of the motion picture *Larceny*, released internationally in February 2017 ("the Subject Motion Picture"), the Internet Service Providers ("ISPs") associated with the IP addresses used by Defendants to infringe, specific dates and times of observed infringement, and the geographic area of Defendants' infringement to a reasonable degree of certainty, proving that each Doe Defendant is in fact located and committed acts of copyright infringement within this judicial district.  Information establishing these facts is set forth and tabulated in **Exhibit A**, along with other identifying information that will assist Plaintiff in ascertaining the true identities of Defendants.

7.     Upon information and belief, each Doe Defendant is an individual whose conduct in this judicial district subjects him or her to the jurisdiction of this Court.  Further, each Doe Defendant has been established as a user of the BitTorrent file distribution network ("BitTorrent") and the IP address used by each Doe Defendant has been observed and confirmed

as using BitTorrent to download and distribute copies of the Subject Motion Picture individually and cooperatively with others during the same time period.

8.   Each Doe Defendant has been observed downloading and distributing unauthorized copies of the Subject Motion Picture ("Infringing Copies") on multiple occasions which, together with other observed activity, indicates that each Doe Defendant is either the party responsible for the IP address assigned by a respective ISP and used to download and distribute Infringing Copies of the Subject Motion Picture ("Subscriber") or a party known to the Subscriber with consistent and permissive use of the Subscriber's Internet service.  Further, the length of time that Defendants were observed copying and collectively distributing Infringing Copies of the Subject Motion Picture demonstrates that Defendants were not merely guests or unknown parties, but instead, were likely individuals with consistent and permissive access to the IP addresses.

9.   Each Doe Defendant's conduct was willful and each was aware that he or she was acting without right and with the specific intent of causing harm to Plaintiff.

10.   The IP addresses used at the time of the infringement were managed by the Subscribers' ISPs and, upon information and belief, the ISPs assigned IP addresses to the Subscribers for extended periods of time and provided Wi-Fi Internet routers with pre-installed security and passwords that prevent unauthorized individuals from using the Internet services of the Subscribers.  Upon information and belief, the ISPs caution Subscribers against allowing third party or non-authorized access, and advise Subscribers that they may be responsible for infringing activity resulting from use by third parties of the Subscriber's Internet services.

11.   Plaintiff intends to seek initial discovery to subpoena records from the ISPs, specifically limiting this discovery to the identity of each Subscriber associated with an IP

address used to infringe, the complete service address for each Subscriber and an email address associated with the Subscriber.  The ISPs will be able to obtain this using the information included in **Exhibit A**.

12.     Plaintiff intends to use the identities of the Subscribers and related information provided by the ISPs to obtain the identities of the users of the Subscribers' Internet services on the dates and times during which Infringing Copies of the Subject Motion Picture were observed being downloaded and distributed using BitTorrent.  Once Plaintiff obtains the true identities of each Doe Defendant, Plaintiff will amend its Complaint accordingly.

## GENERAL ALLEGATIONS

### Plaintiff and Its Rights

13.     The Subject Motion Picture, *Larceny,* is a major motion picture, staring Dolph Lundgren, Jocelyn Osorio and Corbin Bernsen.  The film tells the story of a professional thief enlisted by the CIA to break into a safe at Mexico's top secret Guantanamo Bay-style prison facility and retrieve sensitive information being stored there.

14.     BADHOUSE is, and at all relevant times has been, the owner of exclusive rights under the Copyright Act necessary to bring suit with respect to the Subject Motion Picture. BADHOUSE is also the registered copyright owner of the United States copyright registration for the Subject Motion Picture, Registration No. PAu 3-852-034 ("Plaintiff's Copyright"), a copy of which is attached hereto as **Exhibit B** and incorporated herein by reference in its entirety.

15.     The Subject Motion Picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

16.     Each copy of the Subject Motion Picture includes a proper copyright notice.

17.     The Subject Motion Picture is currently offered for sale in commerce and is in theatres.

**BitTorrent and Peer-To-Peer Internet Piracy**

18.     BitTorrent, also known as peer-to-peer file sharing, has become one of the most common systems for users to illegally dispense huge amounts of data, including motion pictures, in digital format.

19.     The BitTorrent protocol enables computers to exchange large files (such as motion pictures) without creating a heavy workload for any individual source/computer.  It allows users to interact directly with each other to: (1) make files stored on a user's computer (e.g., motion pictures) available for copying by other users; (2) search for files stored on other computers; and (3) transfer exact copies of files from various computers to others over the Internet.

20.     The initial provider of a complete digital file (e.g., a motion picture) intentionally makes the digital file available for others to download.  That initial file is called a "seed" file.  At the time the seed file is created by the initial provider, the file is assigned a unique identifier known as a "hash."  The hash makes it possible to identify identical copies of the same seed file.

21.     In order to distribute the seed file, the BitTorrent protocol breaks the file into many small pieces, each of which is also assigned a distinct identifier known as a "piece hash." A group of users, known as "peers," obtain the complete digital file by downloading and cooperatively exchanging the file pieces among one another, thereby obviating the need for each peer to download a full copy of the complete digital file from the initial provider directly.  As additional users request the complete digital file, they are added to the network of peers (known as a "swarm").  Each new peer receives pieces of the file from other peers who have previously

DeMatteo Law, PLLC
www.demfirm.com

downloaded one or more of the pieces.  As these pieces are received, the peer itself becomes a source for other peers seeking the same pieces of the complete digital file.

22.     After a peer receives all pieces of the complete digital file, that peer's BitTorrent client software reassembles the pieces into the complete file.  The hash associated with the file is then used to ensure that the fully reassembled file is complete and accurate, i.e., that the peer has successfully downloaded the entire file, and that the file is an exact copy of the seed file originally requested by the peer.

23.     Use of BitTorrent requires multiple intentional acts.  A user must load specific software, use the software to join a network, search for a file, and then select the file they wish to download and distribute.  The distribution efforts of each peer contribute to and actively assist other peers in distributing the file.  This contribution benefits the swarm as a whole, and all of its peers, by facilitating and assisting with the distribution of file pieces, which pieces remain and circulate within the swarm.  Since the BitTorrent protocol and software clients typically limit a peer's ability to download unless he or she also shares content (limiting both the speed of download and content available to be downloaded), there is also substantial incentive for each peer to remain within a swarm even after he or she successfully downloads the complete file.  Even so, peers who join the swarm subsequently benefit not only from peers present in the swarm at that time, but also from peers who previously participated in the swarm and helped distribute file pieces to those peers of the swarm who remain.

**The Business of Piracy**

24.     Internet piracy, and in particular BitTorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising.

25.     To increase the value of advertising and sometimes subscription access sold by torrent sites, many parties work to expand the pool of available titles and speed of downloads available by increasing the number of member peers and thus the desirability of their clients and networks.  To accomplish this, torrent sites often reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

26.     Defendants' participation in the BitTorrent exchange of the Subject Motion Picture is the type of activity that torrent sites use to promote their businesses and likely directly furthers the for-profit business of at least one torrent site.

27.     Many parties, and possibly Defendants, have been compensated for their participation in expanding the availability of pirated content to others through BitTorrent networks, including the Subject Motion Picture, even if only by being granted greater access to other pirated content.

28.     The use of BitTorrent does more than cause harm through the simple theft of intellectual property.  The BitTorrent distribution of pirated files is a model of business that profits from theft through sales and advertising and provides a system of rewards and compensation to BitTorrent participants, each of whom contributes to and furthers the illicit enterprise.

**Defendants' Use of BitTorrent To Engage In Infringing Conduct**

29.     In light of the critical acclaim surrounding individuals associated with the Subject Motion Picture, Plaintiff has become the target of unscrupulous individuals who seek to steal the copyrighted content created by and/or owned by Plaintiff.

30.     Through its investigators, MaverickEye, Plaintiff has learned that, without Plaintiff's authorization, each of the Doe Defendants, individually and collectively with others,

has used BitTorrent to search for, reproduce and distribute Infringing Copies of the Subject Motion Picture to the public, thereby violating Plaintiff's exclusive rights protected by the Copyright Act.

31.     MaverickEye has observed and recorded each of the Doe Defendants distributing Infringing Copies of the Subject Motion Picture on multiple occasions, including on the dates and times set forth in **Exhibit A**.

32.     Upon information and belief, Defendants initiated their infringing conduct by intentionally downloading and installing BitTorrent client software (i.e., software that allows users to easily upload, search for and download files using the BitTorrent protocol).

33.     Upon information and belief, Defendants then used their respective BitTorrent client software to purposefully search for and intentionally copy and download Infringing Copies of the Subject Motion Picture.  After each Doe Defendant knowingly and purposefully searched for and downloaded portions of Infringing Copies of the Subject Motion Picture, each Doe Defendant then made these portions available for copying and downloading by other BitTorrent users, thus, willfully joining in a collective and cooperative effort to distribute Infringing Copies of the Subject Motion Picture.

34.     The downloading and distribution of Infringing Copies of the Subject Motion Picture by Defendants using the BitTorrent protocol arises out of the same series of related transactions and occurrences, as the infringing conduct occurred with each Doe Defendant distributing the exact same file as part of an associated swarm during the same time period ("Infringement Period").  Each of the Doe Defendants joined with other peers to form a swarm for the purpose of jointly distributing Infringing Copies of the Subject Motion Picture during the Infringement Period.  Each Doe Defendant also knowingly and materially induced, contributed

to, encouraged and/or caused the infringement of others by distributing and making available to portions of the Subject Motion Picture, thereby increasing the accessibility, bandwidth and number of copies available for future downloading, and did so with knowledge that others would infringe in the future by downloading and/or copying such portions in the future.

35.    Subsequent to the initial search for, download and distribution of the Infringing Copies of the Subject Motion Picture by each Doe Defendant, each Doe Defendant did in fact continue to participate in his/her respective BitTorrent swarm by making Infringing Copies of the Subject Motion Picture freely available to one another and other peers of the swarm for download and distribution during the Infringement Period.

36.    Defendants are more than merely one-time or occasional participants in the unauthorized BitTorrent exchange of pirated copyrighted content.    Indeed, collectively, Defendants' IP addresses have been observed as being associated with the distribution of a substantial number of other copyrighted works using the BitTorrent protocol.  Defendants are significant contributors to the BitTorrent economy of piracy that exploits copyrighted content, causing harm to Plaintiff and to the public in general.  The pervasiveness of Defendants' infringement and use of BitTorrent also evidences that their infringing conduct is intentional, willful and persistent.

37.    The volume of activity and titles associated with Defendants' IP addresses indicates that none of the Doe Defendants is likely to be a young child.

38.    Defendants had notice of Plaintiff's rights through general publication and advertising and more specifically as identified in the content of the Subject Motion Picture, advertising associated with the Subject Motion Picture and copies, which bore a proper copyright notice.

39.     Based on available records, information and belief, most if not all Subscribers were also each sent at least one prior notice of infringing conduct, commonly called a DMCA Notice, issued pursuant to 17 U.S.C. § 512.

40.     Each DMCA Notice provided notice of the wrongful nature of a Doe Defendant's conduct and requested that he or she terminate infringing activity.  These notices also provided an opportunity to avoid suit.

41.     Based on available records, information and belief, Doe Defendants continued infringing activity despite such notice(s).

**Harm to Plaintiff and Others**

42.     Digital piracy, including BitTorrent piracy, costs the entertainment industry over $80 billion per year.

43.     As noted by former Senator Carl Levin in Congressional hearings on peer-to-peer Internet piracy, "[i]n the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines.  In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking – illegal but no big deal.  But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing.  It hurts artists, the music industry, the movie industry, and others involved in creative work.  And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm."

44.     In New York City alone, the film and entertainment industry contributes nearly $9 billion to the local economy each year, a figure that has increased 21%, or $1.5 billion, since 2011.   The entertainment industry in New York City employs hundreds of thousands of

individuals, directly and indirectly, who are involved in all aspect of the community.  Since the beginning of 2014 through the present, over five hundred (500) film productions have called New York City home, and have brought countless dollars and jobs to the economy.

45.    In fact, the State of New York's Governor's Office of Motion Picture & Television Development offers several programs to the film and television industry in the form of tax credits and sales tax exemptions.  The New York State Film Tax Credit, which is designed to increase the film production and post-production industry presence in New York, with the goal of creating a positive impact on the State's economy, allocates credits of $240 million per year to companies in order to encourage film projects in New York, and help create and maintain film industry jobs.  The program itself is limited to feature films, television series, relocated television series, television pilots and films for television, and contains two (2) separate components: the Film Production Credit and the Post-Production Credit, which are available for companies that film a substantial portion of their projects in New York State and companies that contract their post-production work to companies in New York State.  These incentives, which have been followed recently by other states tied closely to the film industry, such as California, have brought significant revenue to local and state entities, and have helped with the increase of jobs throughout New York State.

46.    Piracy on the level of that of Defendants levies a significant cost and threat to the entertainment industry, translating to the loss of millions of dollars and an incalculable number of additional jobs.

47.    The impact of such Internet piracy and the continuing threat of damage to the film and entertainment industry as a whole through means of peer-to-peer file sharing, such as via BitTorrent, led the State of New York to enact N.Y. Pen. Law §§ 275.15 & 275.20, which

provide punishment for the manufacture or sale of unauthorized recordings, including for those individuals who use peer-to-peer file sharing services and protocols, such as BitTorrent.

48.     Given the effect to 17 U.S.C. §§ 101 *et seq.*, the enforcement of intellectual property rights, as well as the fight against counterfeiting and piracy, is a critical issue of importance not only to the United States, but to the State of New York as well.

## JOINDER

49.     Joinder in this action is made under Fed. R. Civ. P. 20(a)(2) (permissive) in that Plaintiff's claims arise out of the same occurrences or transactions, or series of occurrences or transactions, and that there exist questions of law and fact common to each of the Doe Defendants.

50.     Plaintiff has identified Defendants in this Complaint based upon the same investigation which reveals that they copied at least portions of the same Infringing Copies of the same Subject Motion Picture at or about the same time period, using the same technology, and on information and belief, copied the entire work, and collectively and cooperatively distributed at least portions of that work to others using the same BitTorrent protocol.

51.     The architecture of the BitTorrent protocol is such that each file or part thereof downloaded by a peer in a swarm is made available automatically for upload by other peers. While a peer may upload only to a subset of all other peers directly, those peers in turn upload pieces to other peers who join the swarm at a later time.  Thus, a Doe Defendant's "generation" of peers—i.e., peers to whom a Doe Defendant uploaded the file directly—helps pass on pieces of the Subject Motion Picture to the next "generation" of active peers.  In this way, each Doe Defendant not only infringed Plaintiff's rights collectively and cooperatively with others present in his/her swarm at the same time, but also collectively and cooperatively with others who

previously left the swarm, as well as those who joined later, because each Doe Defendant's infringement built upon prior infringements, in a cascade of infringement.

52.     Therefore, each Doe Defendant engaged in a concerted action with others to reproduce and distribute the Subject Motion Picture by making available and exchanging pieces of an Infringing Copy of the Subject Motion Picture.  Each Doe Defendant interacted, either directly or indirectly, with the other peers of his/her respective swarm, in a series of transactions or occurrences that are logically related and will be judged based upon common legal standards.

53.     Permissive joinder in the instant case permits a more efficient management of Plaintiff's claims against the several Defendants and reduces the costs and burdens to Plaintiff, Defendants and the Court.

54.     Nonetheless, Plaintiff agrees to sever into a separate action any named Doe Defendant upon request of that named Doe Defendant.

## CAUSE OF ACTION
### (Federal Copyright Infringement)

55.     Plaintiff repleads and incorporates each and every allegation set forth in the proceeding paragraphs, as if fully and separately set forth herein.

56.     Plaintiff is the exclusive owner of Plaintiff's Copyright in the Subject Motion Picture, including rights protected by a registration for copyright, a copy of the certificate of which is attached hereto as **Exhibit B**.

57.     Defendants had actual and/or constructive notice of Plaintiff's exclusive rights in and to the Subject Motion Picture.

58.     Without Plaintiff's authorization, Defendants knowingly and intentionally copied, reproduced, and distributed original portions of and complete Infringing Copies of the Subject

Motion Picture using the BitTorrent protocol, thereby directly violating and infringing Plaintiff's exclusive rights in and to Plaintiff's Copyright under the Copyright Act.

59.     Defendants also knowingly induced, caused or materially contributed to the copyright infringement of others by making original portions of and complete Infringing Copies of the Subject Motion Picture available to others for download via the BitTorrent protocol.

60.     Each Doe Defendant also knowingly induced, caused and/or materially contributed to the copyright infringement of others who copied, distributed and/or made available the Subject Motion Picture at a later time by disseminating and making available at least portions of the Subject Motion Picture to others of the same swarm, thereby increasing the accessibility, bandwidth and number of copies available of the Subject Motion Picture for future downloading, copying and/or distribution, and did so with knowledge that others would engage in such future downloading, copying and/or distribution of the Subject Motion Picture.

61.     Defendants' conduct was persistent, pervasive, willful, intentional, and in disregard of and indifferent to Plaintiff's rights, with the intent to cause Plaintiff harm and deprive Plaintiff and others of their rights.

62.     Defendants' infringement, as alleged herein, was committed "willfully" within the meaning of 17 U.S.C. § 594(c), and such knowing and intentional infringement has caused, and will continue to cause, substantial and irreparable harm to Plaintiff, for which there is no adequate remedy at law.

63.     Plaintiff is therefore entitled to injunctive relief, including relief prohibiting Defendants from infringing and further contributing to the infringement of Plaintiff's Copyright, the economy of piracy, and ordering that Defendants destroy all copies of the Subject Motion Picture made in violation of Plaintiff's rights.

DeMatteo Law, PLLC
www.demfirm.com

64.     Plaintiff is also entitled to statutory damages and enhanced damages for willful copyright infringement pursuant to 17 U.S.C. § 594 and to reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.     For a finding that Defendants directly infringed Plaintiff's Copyright in the Subject Motion Picture and indirectly infringed Plaintiff's Copyright in the Subject Motion Picture by knowingly inducing, causing and/or materially contributing to the copyright infringement of others;

B.     For a finding that Defendants' infringement was "willful" within the meaning of 17 U.S.C. § 594(c);

C.     For an award of statutory damages pursuant to 17 U.S.C. § 504 against each Defendant, with accruing post-judgment interest;

D.     For entry of a permanent injunction enjoining Defendants from direct or indirect infringement of Plaintiff's rights, except pursuant to a lawful license or with the express authority of Plaintiff, and further directing Defendants to destroy all unauthorized copies of the Subject Motion Picture;

E.     For entry of a permanent injunction enjoining Defendants from supporting the BitTorrent economy of piracy via willful direct or indirect infringement by file sharing in violation of U.S. copyright law;

F.     For Plaintiff's reasonable costs and attorney fees pursuant to 17 U.S.C. § 505; and

G.     For such other and further relief as the Court deems proper.

DeMatteo Law, PLLC
www.demfirm.com

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: September 18, 2017                    Respectfully submitted,

                                                    DeMatteo Law, PLLC

                                                    */s/ Bryan N. DeMatteo*
                                                    Bryan N. DeMatteo (BD 3557)
                                                    bryan@demfirm.com
                                                    830 Third Avenue, 5th Floor
                                                    New York, NY 10022
                                                    Tel.: (866) 645-4169
                                                    Fax: (732) 301-9202
                                                    *Attorneys for Plaintiff*
                                                    *Badhouse Productions, Inc.*